Johnson, Chief Judge.
That the exceptions taken to the refusal to charge as requested, and to the charge as given, is too general to require the court to examine each separate proposition, has been repeatedly decided, and need not again be considered. Adams v. The State, 25 Ohio S. 584; Hallway v. Probst, 30 Ohio St. 105; Servis v. Stockstill, 30 Ohio St. 418 ; Insurance Co. v. Tobin, 32 Ohio St. 77.
But as one of the grounds of the motion for a new trial was that the verdict is contrary to the law and the evidence, and as all the evidence, as well as the charge of the court, is fully set out in the bill of exceptions, this court will, in passing' on the motion for a new trial,'look to all the facts and circumstances to determine whether substantial justice has been done. M. & C. R. R. Co. v. Strader & Co., 29 Ohio St. 448.
This rule requires that we should carefully examine the evidence and charge of the court to see if the judgment is warranted by the evidence and law of the case.
The partnership of McKee & Hamilton began in February, 1869, and ended in February, 1873, during which time McKee lived in Springfield, Ohio, and Hamilton in Harrison county, Ohio, where the business of the firm was chiefly transacted by him.
About the 8th of November, 1870, Hamilton brought to plaintiffs below the original note, payable to Shotwell, signed by himself, and procured their signatures thereto as sureties by representing that McKee wrould also sign it; that the money to be borrowed thereou of Shotwell was to be on the firm account to be used in the business, and that he would procure the signature of McKee thereto, a blauk space being left for that purpose.
It further appears that McKee did sign said original note, as agreed, and that the money borrowed thereon was received and used by the partnership, with McKee’s knowledge and approval. This created a partnership liability.
*12 When this note became due it was renewed, and when tbe renewal-note matured, it was again renewed by the note copied in the statement of facts. At each of these renewals, both of which were made during the life of the partnership, Hamilton, as active partner, procured the signatures of the sureties under like representations as when the first note was signed, and that owing to a failure by the firm to make collections, it was compelled to get a renewal.
The sureties acted on the faith of these representations, and of the promise by Hamilton that he would, as he had in case of the original note, procure the signature of McKee thereto, but this was not done, and neither of the renewal notes was ever signed by McKee. .
It appeals by McKee’s testimony that be bad an understanding with his partner, Hamilton, that he should pay the original note off at maturity, and that he would not sign for a renewal; also that lie supposed it had been paid off.
But it also appears that these sureties acted in good faith, and on the promises and representations of Hamilton, acting for the firm, and without any knowledge of such understanding.
It further appears that tbe usual mode of giving partnership notes was for each to sign them individually, and not in the firm name, which was McKee & Hamilton.
The charge to the jury was in substance, that upon the facts the plaintiffs were the sureties of the partnership on the original note, if its proceeds were received and used in the firm business — that the partnership debt thus created was one that might be renewed — that the renewal was within the scope of the authority of William L. Hamilton, as a managing partner, and that his representations and promises made in procuring the sureties to sign renewal notes were within the scope of that authority, and might be relied on by them, if acting in good faith, as binding upon the firm.
The court’ further instructed the jury, that although *13 McKee’s name was not on the renewal notes, yet the right of the sureties to look to the firm for indemnity was not, under such circumstances, defeated.
It seems to us the doctrine of this charge is consonant with both principle and authority.
It is claimed that as McKee’s name was not on either of the renewal notes, they are to be deemed the individual notes of William L. Hamilton, with defendants in error as his sureties, and that the first one was in law a payment of the original note signed by McKee, and the payment of the last one by the sureties was a payment for the principal named in the note, and not for the principals in the original debt, and therefore the sureties must look alone to the principal of the note which they paid.
If this were an action by the payee, Shotwell, to recover the money loaned, he might be barred of an action on the original debt after surrendering the note signed by McKee, and accepting a new note without his name, if such new note was-received in payment of the old one.
But the right of a surety to indemnity from his principal does not depend on the terms of the contract with the payee, but on the fact that as surety he has been compelled to pay money for his principal.
It was part of the agreement by William L. Hamilton, at each of these renewals, both of which were made during the partnership, that he would procure the signature of McKee, and that they were simply renewal notes for the firm of McKee & Hamilton.
It follows that the obligation of these sureties, as they understood it, which they incurred by resigning renewal notes, was on account of the firm, and not for William L. Hamilton, and as this was manifestly their intention, it can not be claimed that, as between them and the firm, they have relinquished their original right to look to the firm for indemnity.
The original debt was that of the partnership. The sureties for that d»bt have never intentionally relinquished *14 their claim to look to the firm to pay the debt. It never was paid by the firm, and therefore when paid by the sureties, their right to recover against the firm was perfect.
This view of the case is sustained by authority.
In Hersey v. Heath, 5 Ohio, 855, L. & H. were partners, and borrowed on joint note $2,000 out of bank, by giving Hersey and others as sureties. H. transacted the business and renewed the note from time to time, the first three times the reuewal notes had the names of both L. & H., the other times that of H. alone, as principal; but Hersey indorsed relying upon the responsibility of both, and under the assurance of H. that all were to sign the paper. H. and the other parties became insolvent, and Hersey, having paid the note, filed his bill against the estate of L. for indemnity.
It is said by the court, that the surety became bound for L. as well as H., and has been compelled, in consequence, to pay money. Both were equally liable to him, and, at law as well as on the plainest principles of justice, he has a right to proceed against both until 'made whole, and to recover from either or both.
It is further said : “ No new debt was created at bank. The old one remained outstanding, although, to conform to the custom of business in the bank, when continued, and further time was given, the evidence of the debt was from time to time changed.” . . . “ When the identity of the debt is ascertained, it is now settled that a mere change of the evidence of it will not affect the liability of the real parties in a court of chancery.”
In this case, the original debt to Shotwell remained the same. The renewal notes only changed the evidence of it. That McKee’s name was not on the renewal notes was the fault of his partner, and without the knowledge or consent of the sureties.
In Purviance v. Sutherland, 2 Ohio St. 478, it was held: “That a request by a partner, while professing to act for and on behalf of the firm, that A. B. should become surety, is, in law, the request of the firm,” although the note was *15 not, in law, the note of the firm. See also, Crumbaugh v. Kugler, 3 Ohio St. 546.
In Wharton v. Woodburn, 4 Dev. & Bat. 507, the key to the solution of this question is given, when it is said, “but it is to be recollected that the contract between the principal and surety, though it may be inferred from the nature of the security given to the creditor, is not contained therein, nor evidenced thereby, but is a collateral contract, usually a parol one which may be shown by any competent and satisfactory evidence.”
In that case, the court went much farther than we are required to go, and held that the firm was bound, when a surety signed at the request of one member of the firm, though the note was not binding upon it, and although the money did not go to the use of the firm. In this case the money was received and used by the partnership and its liability became fixed. The fact that ¥m. L. Hamilton had agreed with McKee that the note was not to be . renewed, and that McKee supposed it had been paid, can not change the power of the former to bind the firm by a renewal, when strangers to the partnership acted in good faith.
In Peterson v. Roach (decided at the present term), it was held that where a partner borrows money on the credit of his individual note, signed by a surety, such borrowing does not create a partnership liability, though the money be applied to the partnership purposes; and the sureties, if compelled to pay the note, must look to the principal on the note, and not to the partners generally, for his indemnity. In that case no partnership liability was created, and the surety signed, not for the firm but for the principal of the note; and the simple fact, that the firm got the benefit of the loan, did not give the surety a right to contribution against all the partners, as the credit was given to one only of them.
In this case a partnership liability was created. The plaintiffs were liable as sureties of the firm, and not for one partner; and, in signing the renewal notes, they acted on *16 the faith of representations made by a partner acting within the scope of his power.
During the trial the representations of "William L. Hamilton, made to the sureties, to procure their signatures to the renewal notes, were given in evidence, to show the circumstances under which they became such sureties, and also at the time they signed the renewal notes.
As he was the managing partner in the business in Harrison county, and as the borrowing of this money, and the renewal of the note, were within the scope of his authority, his statements and representations, made to procure the loan, and also to obtain a renewal, are binding on the partnership, and, if relied upon by the plaintiff, are competent evidence upon the issue in this case.

Judgment affirmed.